KAREN P. HEWITT
United States Attorney
CARLOS M. ARGUELLO
DAVID D. LESHNER
Assistant U.S. Attorneys
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-6252/(619) 235-2757 (Fax)

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,  )<br>  )<br>            Plaintiff,  )<br>  )<br>      v.  )<br>  )<br> JOSE GALLEGOS-LOPEZ,  )<br>  )<br>            Defendant.  )<br>_____ ) | Criminal Case No. 08CR0085-L<br><br>DATE:   March 17, 2008<br>TIME:   10:00 a.m.<br><br>**GOVERNMENT'S RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE** |

COMES NOW the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Carlos M. Arguello and David D. Leshner, Assistant U.S. Attorneys, and hereby files its oppositions to defendant's Motions In Limine in the above-referenced case. Said motions are based upon the files and records of this case together with the attached statement of facts and memorandum of points and authorities.

///
///
///
///
///
///
///
///

# I
# STATEMENT OF THE CASE

The Defendant, Jose Gallegos-Lopez (hereinafter "Gallegos" or "Defendant"), was charged by a grand jury on January 9, 2008, with violating 8 U.S.C. §§ 1324(a)(2)(B)(ii), bringing in illegal aliens for financial gain, 8 U.S.C. §§ 1324(a)(1)(A)(iii), harboring illegal aliens, and aiding and abetting. Defendant was arraigned on the four-count Indictment on January 15, 2008, and entered a plea of not guilty.

# II
# STATEMENT OF FACTS

On the evening of December 29, 2007, United States Border Patrol Agents ("BPAs") were conducting surveillance in Calexico CA. The BPAs were positioned near First Street in a residential area to the east of the Calexico, California Port of Entry. This area is immediately adjacent to the International Border Fence – which is located on the south side of First Street – and is notorious for alien smuggling activity.

At approximately 11:35 p.m., BPAs observed Defendant walk outside into the backyard of 941 First Street ("the property"). Defendant walked to a shed in the backyard, appeared to unlock the door and then opened and closed the door as though testing to make sure it was unlocked. Defendant did not enter the shed, and he did not put anything in the shed or take anything out of it.

Defendant then walked away from the shed and discharged approximately 20 rounds from a pellet gun into fences located near adjacent residences. The noise from the pellets hitting the fences caused multiple dogs to begin barking. When the dogs began barking, Defendant walked to the east through his backyard to a chain link fence separating the yard from a vacant lot. Defendant leaned over the chain link fence and peered south toward the border fence. Defendant then returned the backyard and discharged more rounds from the pellet gun.

///

1       Immediately thereafter, BPAs observed suspected smugglers place a ladder on south side of the border fence. Two suspected illegal aliens climbed up the ladder and over the top of the fence into the United States.

       The suspected aliens ran north across First Street, as the suspected smugglers shouted directions. The suspected aliens ran north into the vacant lot on First Street where Defendant had been standing and then climbed over the chain link fence and entered the backyard of 941 First Street. Upon entering the backyard, the suspected aliens ran within feet of Defendant. The suspected aliens ran into the shed and loudly slammed the door shut behind them.

       Defendant then walked from the backyard into the property's front yard. Notwithstanding that it was almost midnight, Defendant proceeded to water the front yard with a hose. Both suspected aliens remained inside the backyard shed. After approximately 45 minutes, BPAs approached Defendant as he continued to water the front yard. As agents attempted to detain Defendant, he became combative. After subduing Defendant, BPAs placed him under arrest.

       Defendant's father, the property owner, gave consent to search the residence and shed. BPAs used a key to unlock the shed and found two individuals concealed inside, Bernabe Hernandez-Montes and Gerardo Montes-Alberdin (hereafter "the material witnesses"). Both material witnesses stated that they were citizens and nationals of Mexico illegally present in the United States and that they were not in possession of any immigration documents allowing them to enter or to remain inside the United States. Each stated that they had made arrangements to be smuggled illegally into the United States for between $2,500 and $2,800 USD. Further, both material witnesses stated that the smugglers on the south side of the International Boundary Fence had given them specific instructions to climb the fence and to run into the shed in the property's backyard.

       In the course of searching the residence, BPAs found a pellet gun in the front living room.
///
///

## III

## **DEFENDANT'S MOTIONS IN LIMINE (FIRST SET)**

**A.     Motion In Limine Nos. 1.**

The Government will not elicit testimony in its case-in-chief that the 941 First Street residence is "notorious" for alien smuggling unless Defendant opens the door to such testimony. However, this case arises from surveillance conducted by Border Patrol Agents of the residence and surrounding vicinity, and agents properly may testify that alien smuggling is a common occurrence in the area to put the surveillance in context.

**B.     Motion In Limine No. 2.**

The Government will not elicit testimony in its case-in-chief that Border Patrol Agents have apprehended numerous illegal aliens at the 941 First Street residence unless Defendant opens the door to such testimony. However, this case arises from surveillance conducted by Border Patrol Agents of the residence and surrounding vicinity, and agents properly may testify that alien smuggling is a common occurrence in the area to put the surveillance in context.

**C.     Motion In Limine No. 3.**

The Government will not elicit testimony in its case-in-chief that Border Patrol Agents have apprehended numerous illegal aliens in the shed located in the backyard of the 941 First Street residence unless Defendant opens the door to such testimony.

**D.     Motion In Limine No. 4.**

The Government will not elicit testimony in its case-in-chief that Jose Gallegos-Lopez is a known alien smuggler unless Defendant opens the door to such testimony.

**E.     Motion In Limine No. 5.**

The Government will not elicit testimony in its case-in-chief concerning the incident during which Defendant attempted to assault Border Patrol Agents with a hammer unless Defendant opens the door to such testimony.

///

**F.      Motion In Limine No. 6.**

This case arises from surveillance conducted by Border Patrol Agents of the 941 First Street residence and surrounding vicinity, and agents properly may testify that alien smuggling is a common occurrence in the area to put the surveillance in context. The Government currently does not intend to elicit testimony regarding reports of suspected illegal aliens in a vacant lot near 941 First Street. In any event, any such testimony would not be offered to prove the truth of any out of court statements but rather to demonstrate the agents' state of mind and the purpose of the surveillance. There is no issue under Federal Rule of Evidence 404(b), because the Government would not elicit testimony that Defendant was involved in those prior incidents.

**G.      Motion In Limine No. 7.**

Defendant concedes that agents may testify as to their observations during the surveillance, including Defendant's activities at the 941 First Street residence. Under Federal Rule of Evidence 701, agents also may offer lay opinion testimony that is rationally based on their perceptions and helpful to the jury. See, e.g., United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995) (agent properly allowed to provide lay opinion about nexus between drug trafficking and possession of weapons). The Ninth Circuit has approved lay opinion testimony based on surveillance observations. See, e.g., United States v. Fleishman, 684 F.2d 1329, 1335 (9th Cir. 1982) (agent testified that defendant acted as lookout for narcotics transactions). Cf. United States v. Simas, 937 F.2d 459, 464-65 (9th Cir. 1991) (agents who spoke with defendant properly allowed to opine as to what defendant meant to convey). Here, agents who observed Defendants' activities may provide a lay opinion – based on their own observations – as to the purpose of his actions in repeatedly firing a pellet gun immediately prior to the illegal aliens' entry into the United States and their attempts to hide in Defendant's backyard.

///

///

**H.    Motion In Limine No. 8.**

The Government will not elicit testimony in the form of a conclusion that Defendant "clearly" was involved in smuggling, but agents properly may testify that they arrested Defendant on alien smuggling charges.

**I.    Motion In Limine No. 9.**

The Government will not present evidence that defendant invoked his right to counsel following his arrest.

**J.    Motion In Limine No. 10.**

Defendant incorrectly asserts that the material witnesses may not testify as to instructions given to them by the smugglers in Mexico before they climbed over the border fance. As explained in the Government's motions in limine, these orders or instructions are not hearsay because they are not offered for the truth of the matter asserted. See, e.g., United States v. Bellomo, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."); United States v. Shepherd, 739 F.2d 510, 514 (10th Cir. 1984) ("An order or instruction is, by its nature, neither true nor false and thus cannot be offered for its truth.").

To the extent either material witness testifies as to other statements by the smugglers, those statements are admissible under Federal Rule of Evidence 801(d)(2)(E). Co-conspirator statements are admissible if the United States demonstrates that (1) a conspiracy existed, (2) the defendant and the declarant were members of the conspiracy, and (3) the statement was made during the course of and in furtherance of the conspiracy. United States v. Bourjaily, 483 U.S. 171, 175 (1987); United States v. Bridgeforth, 461 F.3d 864, 869 (9th Cir. 2006). As explained in the Government's motions in limine, each of these three criteria is met in this case: (1) the actions of Defendant and the material witnesses, as well as the smugglers' statements, evidence a conspiracy between Defendant, the smugglers and the material witnesses to smuggle

1  the material witnesses into the United States and harbor them; (2) Defendant and the smugglers
2  were members of the conspiracy; and (3) the statements were in the course of and in
3  furtherance of the conspiracy because they concerned the material witnesses' entry into the
4  United States and their concealment in Defendant's backyard.

**K.     Motion In Limine No. 11.**

This motion should be denied for the same reasons as Motion In Limine No. 10.

**L.     Motion In Limine No. 12.**

The Government has provided notice to defense counsel of its intent to introduce evidence of three prior smuggling events under Federal Rule of Evidence 404(b). As explained in the Government's motions in limine, evidence of these events on November 18, 2004, January 9, 2005 and February 17, 2005 is admissible to establish Defendant's knowledge, intent, plan and lack of mistake.  See United States v. Winn, 767 F.2d 527, 530 (9th Cir. 1985) (per curiam) (district court properly admitted defendant's prior conviction for transportation of illegal aliens "because it shows that appellant had knowledge of the smuggling operation in which he was involved"); United States v. Longoria, 624 F.2d 66,69 (9th Cir. 1980) (defendant's prior conviction for transporting illegal aliens was "highly relevant and admissible to show the requisite knowledge, criminal intent, and lack of innocent purpose"); United States v. Holley, 493 F.2d 581, 584 (9th Cir. 1974) (defendant's prior apprehension for transporting illegal aliens was properly admitted to show knowledge, even though the apprehension did not result in a prosecution).

Evidence of other acts is admissible under Federal Rule of Evidence 404(b) where it: (1) tends to prove a material point; (2) is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; (4) the act is similar to the offense charged; and (5) the act's probative value is not substantially outweighed by unfair prejudice under Rule 403. United States v. Romero, 282 F.3d 683, 688 (9th Cir. 2002) (citation omitted). Defendant's prior apprehensions for alien smuggling are probative of his intent with respect to

1  the instant offense. That the prior apprehensions involved Defendant driving a vehicle through
2  the Calexico Port of Entry may go to the weight the jury gives this evidence – a point defense
3  counsel may argue. But the fact that the prior smuggling apprehensions were not identical to
4  the instant offense does not seriously diminish the probative value of this evidence in
5  establishing Defendant's knowledge, intent, plan and lack of mistake with respect to the instant
6  offense. Moreover, the prior smuggling events are not remote in time, and Defendant has made
7  no showing that their probative value will be substantially outweighed by the danger of <u>unfair</u>
8  <u>prejudice</u>.

## IV

## **DEFENDANT'S MOTIONS IN LIMINE (SECOND SET)**

Defendant's second set of motions in limine are, in essence, oppositions to the Government's earlier-filed motions in limine to admit expert testimony and evidence under Federal Rule of Evidence 404(b). To avoid unnecessary duplication, the Government shall not repeat the arguments set forth in the Government's memorandum of points and authorities filed on March 3, 2008. Further, Section III(L), <u>supra</u>, discusses the admissibility of evidence of Defendant's prior smuggling apprehensions under Rule 404(b). In this section, the Government shall briefly respond to the specific points raised in Defendant's motion to exclude the Government's expert witness.

The Government has provided notice of its intent to call ICE Agent Don Webster as an expert witness. Agent Webster has 23 years of law enforcement experience and has participated in over 1000 alien smuggling investigations in Imperial County, California. Based on that experience, as well as his training with Border Patrol and ICE, Agent Webster will testify concerning the structure and methods of alien smuggling organizations in the Calexico area and the for-profit nature of those organizations.

///
///

8

1   The structure and methods of alien smuggling organizations in Imperial County are not
2   matters within the common knowledge of an average juror, and testimony in those areas would
3   assist the trier of fact in understanding Defendant's role in the alien smuggling operation at
4   issue in this case.  Accordingly, such testimony falls well within the scope of permissible
5   expert testimony under Federal Rule of Evidence 702.  Indeed, the Ninth Circuit has relied on
6   expert testimony in alien smuggling cases to uphold § 1324 convictions.  See, e.g., United
7   States v. Tsai, 282 F.3d 690, 697 (9th Cir. 2002) (affirming alien smuggling conviction based,
8   in part, on government expert testimony "regarding the usual fees paid to escorts and the usual
9   price paid by a smuggled alien").

10  Defendant's attempt to analogize this testimony to drug courier profile testimony misses
11  the mark.  A drug courier profile is a "somewhat informal compilation of characteristics"
12  common to drug smugglers.  United States v. Cordoba, 104 F.3d 225, 229 (9th Cir. 1997).
13  Profile testimony is "inherently prejudicial" and admissible only in limited circumstances.  Id.
14  at 230.  On the other hand, the Ninth Circuit has repeatedly upheld the use of modus operandi
15  testimony, which assists the jury in understanding criminal activity and "alerts it to the
16  possibility that combinations of seemingly innocuous events may indicate criminal behavior."
17  United States v. Gil, 58 F.3d 1414, 1422 (9th Cir.1995) (citation omitted).  See also Cordoba,
18  104 F.3d at 230 (district court properly admitted expert testimony that drug traffickers do not
19  entrust large quantities of narcotics to unknowing transporters because such testimony went to
20  modus operandi and was not a drug courier profile).

21  Here, the Government will offer Agent Webster's testimony to assist the jury in
22  understanding the modus operandi of alien smugglers and why Defendant's actions (e.g.,
23  unlocking the shed, firing a pellet gun, looking toward the border, ignoring individuals running
24  into the shed and then watering his front yard) are indicative of criminal behavior.
25  ///
26  ///
27
28                                                   9

# V

# **CONCLUSION**

For the foregoing reasons, the Government respectfully requests that the Court deny Defendant's motions.

DATED: March 10, 2008.          Respectfully submitted,

                                KAREN P. HEWITT
                                United States Attorney


                                s/ David D. Leshner
                                DAVID D. LESHNER
                                Assistant United States Attorney

10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 08CR0085-L |
|---|---|
| Plaintiff, | |
| v. | CERTIFICATE OF SERVICE |
| JOSE GALLEGOS-LOPEZ, | |
| Defendant. | |

IT IS HEREBY CERTIFIED THAT:

I, DAVID D. LESHNER, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of UNITED STATES' RESPONSE AND OPPOSITION TO DEFENDANT'S MOTIONS IN LIMINE on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Lynn H. Ball, Esq.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on March 10, 2008.

s/ David D. Leshner  
DAVID D. LESHNER